UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| AMANDA LYNN GRAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:14-CV-361-JD |
| | ) |
| CAROLYN W. COLVIN, | ) |
| ACTING COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Amanda Lynn Gray ("Gray") applied for Disability Insurance Benefits and Supplemental Security Income in 2008. Both applications were denied initially and upon reconsideration. Gray then filed a complaint in this Court, seeking review of the final decision of the Defendant Commissioner of Social Security ("Commissioner"). [DE 1]. On January 13, 2015, Gray filed her brief in support of her request to reverse the decision of the Commissioner, [DE 9], to which the Commissioner responded on April 23, 2015. [DE 14]. On May 20, 2015, Gray filed her reply. [DE 17]. The matter is now ripe for ruling, and jurisdiction is established pursuant to 42 U.S.C. § 405(g). For the following reasons the Court REMANDS this matter to the Commissioner for further proceedings.

### I. FACTUAL BACKGROUND

Gray filed her application for benefits in 2008, alleging an onset date of September 2, 1985 for limitations caused by physical and mental impairments. Gray's application was denied initially but remanded upon reconsideration by the Appeals Council, because the mental limitations in the residual functional capacity were not clearly defined, and did not articulate a

function-by-function assessment of Gray's residual functional capacity consistent with Gray's ability to perform the mental requirements of work. In accordance with the Appeals Council's remand order, a new administrative hearing with Administrative Law Judge Dennis Kramer ("ALJ") was held on April 15, 2013, at which Gray was represented by counsel. At the hearing the ALJ heard testimony from Gray, Ashok Jilhewar, M.D., an impartial medical expert, Larry M. Kravitz, Ph.D., an impartial medical expert, and Leonard M. Fisher, a vocational expert ("VE").

In the written opinion that followed, the ALJ found Gray had not engaged in substantial gainful activity since the alleged onset date of September 2, 1985 consistent with 20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.* (R. 18-19). Furthermore, the ALJ determined Gray suffered from the following severe impairments: morbid obesity, bronchial asthma, plantar fasciitis, bilateral calcaneal heel bursitis, right upper extremity ulnar neuropathy, attention deficit hyperactivity disorder ("ADHD"), a learning disability, a dysthymic disorder, and personality disorder. (R. 19). The ALJ believed that Gray's impairments, while severe, did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpt. P, Appendix 1 ("Listings"). (R.19-21). The ALJ found Gray had the residual functional capacity (RFC)[1] to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 6 hours in an 8 hour workday and for 2 hours at one time, and sit for 8 hours in an 8 hour workday and for 2 hours at one time, along with the following limitations:

> "[She] can frequently handle, finger, feel, push and/or pull bilaterally, reach overhead and in all other directions with the right hand, and perform these activities continuously with the left hand. She can frequently operate foot controls using the bilateral lower extremities. She can frequently climb ramps and stairs, and she can frequently balance and stoop, but she can never climb ladders, ropes or scaffolds, and she can never kneel, crouch or crawl. [She] can tolerate frequent exposure to unprotected heights, moving

---

[1] Residual Functioning Capacity is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545.

mechanical parts, extreme heat and operation of a motor vehicle, she can tolerate occasional exposure to humidity and wetness, dust, odors, fumes, and pulmonary irritants, extreme cold and vibrations, and she can tolerate loud (heavy traffic) noise levels. In addition, [she] is able to understand, remember and carry out simple instructions, make judgments on simple work related decisions, respond to usual work situations and to changes in a routine work setting, and she can tolerate occasional interaction with coworkers, supervisors, and the public." (R. 21-22).

With this RFC in mind, the ALJ presented hypothetical questions to the VE. The ALJ determined Gray had no past relevant work experience consistent with 20 C.F.R. § 404.1568 and § 416.968. (R. 27). The ALJ concluded Gray could perform the jobs identified by the VE (consistent with the limitations solicited from the RFC above), including work as an electronic worker, cleaner-housekeeper, office helper, and wire prep machine operator. (R. 28). As a result, the ALJ determined that Gray was not disabled. The Appeals Council denied review of the ALJ's decision, making the decision the final determination of the Commissioner. 20 C.F.R. § 404.981; *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013).

## II. STANDARD OF REVIEW

In reviewing the decision, the Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

3

In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection, and may not ignore an entire line of evidence that is contrary to his findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (citation omitted). Rather, an ALJ must "articulate at some minimal level his analysis of the evidence" to permit an informed review. *Id*. Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Furthermore, conclusions of law are not entitled to deference; so, if the Commissioner commits an error of law, reversal is required without regard to the volume of evidence in support of the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## III. ANALYSIS

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential

evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The steps are used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform relevant past work; and
5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

If the claimant is performing substantial gainful activity or does not have a severe medically determinable impairment, or a combination of impairments that is severe and meets the duration requirement, then the claimant will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i)–(ii). At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). In the alternative, if a Listing is not met or equaled in between steps three and four, the ALJ must assess the claimant's RFC, which is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society at step five of the analysis. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Gray argues the ALJ erred by 1) not giving the proper weight to the opinions of the treating physicians; 2) improperly determining Gray's impairments did not medically equal

Listing 12.02 and/or Listing 12.04; and 3) the ALJ's step-five finding was not supported by substantial evidence. Additionally, in Gray's reply brief, Gray provides new medical evidence for the Court's consideration. [DE 17-1].

**A. Treating Physicians' Opinions**

Gray argues the ALJ erred in not giving controlling weight to her treating physicians Dr. Linda Munson, and Dr. Daniel Kim. [DE 9 p. 8]. Alternatively, Gray argues remand is necessary where the ALJ did not articulate the reasons for discounting the treating physicians' opinions in accordance with 20 C.F.R. § 404.1527(d)(2). [DE 9 p. 9].

Disability cases typically involve three types of physicians: 1) a treating physician who regularly provides care to the claimant; 2) an examining physician who conducts a one-time physical exam of the claimant; and 3) a reviewing or non-examining physician who has never examined the claimant, but read the claimant's files to provide guidance to an adjudicator. *See Giles v. Astrue*, 433 Fed.Appx. 241, 246 (5th Cir. 2011). The opinion of the first type, a "treating physician," is ordinarily afforded special deference in disability proceedings. The regulations governing social security proceedings instruct claimants to that effect:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2).

The treating physician's opinion is *not* entitled to controlling weight, however, where it is not supported by the objective medical evidence, where it is inconsistent with other substantial

evidence in the record, or where it is internally inconsistent. *See Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) (citing *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995)). Ultimately, an ALJ's decision to give lesser weight to a treating physician's opinion is afforded great deference so long as the ALJ minimally articulates his reasons for doing so. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). The Seventh Circuit has deemed this very deferential standard to be "lax." *Id.* Nevertheless, the ALJ must offer "good reasons" for discounting a treating physician's opinion. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011).

If the ALJ decides the treating physician's opinion should not be given controlling weight, the ALJ is "required by regulation to consider certain factors in order to decide how much weight to give the opinion[.]" *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). These factors are set forth in 20 C.F.R. § 404.1527(c)(2)(i)-(ii) and § 404.1527(c)(3)-(6) including: 1) the "length of the treatment relationship and the frequency of examination," 2) the "[n]ature and extent of the treatment relationship"; 3) "[s]upportability"; 4) consistency "with the record as a whole"; and 5) whether the treating physician was a specialist in the relevant area.

In summary, in assessing what weight to give a treating source statement, the ALJ must proceed step-by-step. First, the ALJ asks whether the treating source statement is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2). If it is, it must be given "controlling weight." If it is not, however, the ALJ must ask just how much weight to give it relative to the other record evidence, guided by the factors listed at § 404.1527(c)(2)(i)-(ii) and § 404.1527(c)(3)-(6).

1. *Dr. Munson's Testimony*

The ALJ discredits the opinion of Dr. Munson, giving it "very little weight." (R. 26). The ALJ does so finding there were 1) "few, if any, significant clinical findings on repeated exams" and; 2) Dr. Munson's opinions were "internally inconsistent." (*Id.*) This Court construes the ALJ's reasoning for these inconsistencies to be based on the rapid decline of Gray's condition without any clinical corroboration performed by Dr. Munson, as well as internal inconsistencies from Dr. Munson's Medical Source Statements, Mental Residual Functional Capacity Assessments ("MRFC"), and narrative reports.

When examined closely, however, none of the ALJ's reasons are supported by the evidence and appear to completely disregard substantive evidence in the record. First, with regard to clinical findings, Dr. Munson made the following findings about Gray: cognitive deficits, poor intellectual/academic functioning, passive suicidal ideation, emotional immaturity, poor frustration tolerance, unrealistic goal setting, and poor coping skills. (R. 697, 856-857). The Social Security Regulations identify such observable psychiatric abnormalities as acceptable clinical and diagnostic techniques. *See* 20 C.F.R. § 404.1528 and § 416.928. The ALJ does not explain why he believed these clinical observations could not support controlling weight. In fact, the ALJ does not mention Dr. Munson's findings in his opinion.

The ALJ's conclusion that Dr. Munson's opinions were not supported lacks evidentiary support and ignores corroborating evidence. The ALJ was required to assess whether the treating physician's opinions were "inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R § 404.1527(c)(2). The ALJ failed to do so. Nowhere in the ALJ's assessment of Dr. Munson's opinion does he engage with the evidence in the record. Specifically, this Court

would note the substantial evidence set forth by Drs. Cools,[2] Nordstrom,[3] Spores,[4] Rini,[5] and Garden[6] which supports Dr. Munson's opinions.  Most notably, the ALJ fails to recognize the decreased Full Scale IQ scores from 91, while Gray was in school, (R. 590), to 84 in April 2011, (R. 757), and 79 in March 2013, (R. 1115). Additionally, Gray's GAF scores show a decline from 62 in December 2008, (R. 653), to 57 in April 2011, (R. 759).  This evidence could support a finding of decline in Gray's condition, which the ALJ appears to have selectively ignored. Where the ALJ commented repeatedly on the paucity of "clinical evidence" in the record, it is puzzling to this Court why the clinical evidence that was available was not discussed in connection with the treating physician's opinion,[7] especially when Dr. Munson referred Gray to Dr. Garden for further treatment and assessment.

While it is true the ALJ included some of the clinical findings of Drs. Rini, Nordstrom, and Spores in his opinion, (R. 24-25), their findings were never discussed as it relates to Dr. Munson's assessment of Gray's abilities.  The Commissioner argues this is without error because by relying on the opinion of Dr. Kravitz who reviewed the findings of Drs. Spores, Rini, and Nordstrom, it was as if the ALJ considered these opinions, and for the same reasons as Dr.

---

[2] Dr. Cools testified as a medical expert at the June 23, 2011 hearing, after reviewing all medical records. Dr. Cools noted the findings from Dr. Nordstrom, which indicted borderline intellectual functioning as well as Gray's "substantial difficulties" in performing tasks that required her to use various skills. Dr. Cools found this consistent with Dr. Munson's evaluation. (R. 108-111).
[3] Dr. Nordstom conducted a clinical interview, mental status examination, the Wechsler Adult Intelligence Scale, Fourth Edition, Wechsler Memory Scale, Fourth Edition, Wide-Range Achievement Test, Third Edition (WRAT-III); and the Minnesota Multiphasic Personality Inventory, Revised (MMIP-2). (R. 755-770).
[4] Dr. Spores conducted a diagnostic interview, mental status examination, tested Gray on the Wechsler Adult Intelligence Scale (WAIS-IV), and Millon Clinical Multiaxial Inventory – III (MCMI-III). (R. 1113-1118).
[5] Dr. Rini conducted a mental status examination. (R. 650-653).
[6] Dr. Garden, to whom Gray was referred by Dr. Munson, conducted the Conners' Continuous Performance Test II (CPT II). (R. 773-776).
[7] To the extent the Commissioner made a veiled argument that Dr. Munson was not a "treating physician," but rather a physician for "medication management," [DE 14-1 p. 2], this Court does not agree. A treating physician is one who regularly provides care to the claimant. *See Giles v. Astrue*, 433 Fed.Appx. 241, 246 (5th Cir. 2011). Here, Dr. Munson treated Gray from 2009 until at least June 2011.  The record shows at least eight office visits during which Dr. Munson examines Gray's progress, makes clinical observations, and refers Gray to specialists for further testing. (R. 699-700, 701-703, 704-705, 710-711, 712-714, 724-725, 737-739, 740-741). These are the actions of a treating physician, and as such, Dr. Munson's opinion was entitled to be treated like a treating physician.

Kravitz, dismissed these findings as inconsistent. [DE 14 p. 11-12]. This argument is without merit. The ALJ may not summarily substitute his analysis with the opinion of a non-examining physician, even if the ALJ agrees with Dr. Kravitz. *See Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) (noting that an ALJ must not "substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record"). There is an inadequate discussion of the issues that render the opinion fatally flawed.

Gray further argues the ALJ ignored evidence that supported Dr. Munson's findings. [DE 9 p. 13-15]. Specifically, that there was evidence that corroborated Dr. Munson's assessment in Drs. Nordstrom's, Spores', Rini's and Garden's findings. [*Id*.] Gray also argues Dr. Cools' testimony, a medical expert who testified at a prior administrative hearing in 2011, supported the opinion of Dr. Munson. [*Id*.] This Court cannot appropriately address this argument since there is no analysis provided by the ALJ. An ALJ's decision cannot stand where it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Here, the ALJ did not discuss any of the surrounding evidence in affording Dr. Munson's opinion "very little weight." And while the Commissioner provides a very thorough analysis examining the opinions of Drs. Nordstrom, Spores, Rini, Garden, and Cools as they relate to Dr. Munson's opinion [DE 14 p. 7-13], that argument cannot substitute for an inadequate discussion by the ALJ. The ALJ is not required to address every piece of evidence or testimony presented, but he must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). The absence of any analysis in the ALJ's opinion fails to provide any bridge upon which this Court can make a ruling.

The ALJ also discredits Dr. Munson's opinion because it is "internally inconsistent." (R. 26). Specifically, the ALJ finds inconsistencies in Dr. Munson's January 2010 MRFC, in which Dr. Munson notes several moderate to moderate severe impairments and opines that while Gray's depression was not severe, Gray would be capable of low level work. (R. 694-696). In the narrative report that follows the January 2010 MRFC, Dr. Munson states occupational support would be necessary to perform low level work. (R. 697). In a later MRFC,[8] dated September 13, 2010, Dr. Munson notes numerous worsening symptoms of Gray, however, does identify some areas in which Gray is improving such as ability to remember locations and work like procedures, ability to work in coordination with or proximity to others without being distracted, ability to be aware of normal hazards and take necessary precautions. (R. 727-729). In the Medical Source Statement of June 2011, Dr. Munson notes the extreme loss of Gray's ability to understand and remember detailed instructions; carry out detailed instructions; accept instructions and respond appropriately to criticism from supervisors; and set realistic goals or plans. (R. 852-853). In the narrative report that follows the June 2011 Medical Source Statement, Dr. Munson notes Gray's mood had not worsened; Gray did not meet criteria for Major Depressive Disorder; Gray had benefitted from her medication; and noted that mood problems, by themselves, did not prevent Gray from working, stating Gray needed further medical assessments. (R. 856-857).

In discounting Dr. Munson's opinions as inconsistent, the ALJ overstated his case. First, the Court struggles to understand the ALJ's argument as to the inconsistencies in the 2010 MRFC's and narrative reports. Regarding these inconsistencies the ALJ writes,

> "For example, Dr. Munson stated in 2010 that the claimant's depression was not "severe," but that the claimant was "cognitively challenged." As a result, Dr. Munson

---

[8] Notably, the September 2010 MRFC does not appear to be complete. It is unclear whether the ALJ cited the September 2010 MRFC as inconsistent for this reason, or because some of Gray's symptoms had improved.

stated that the claimant would be unable to perform "mildly difficult employment," but she could perform "low level jobs," which is actually not inconsistent with the limitations articulated in the residual functional capacity stated herein. At the same time, Dr. Munson suggested that the claimant had moderate limitations in concentration and memory in 2010, among other things." (R. 26).

It would appear the ALJ is arguing Dr. Munson offered these opinions at the same time, when in reality there were two MRFC's conducted by Dr. Munson in 2010, eight months apart. In the January 2010 MRFC, Dr. Munson opined Gray would be capable of "low level jobs" with "occupational support." (R. 697). In the September 2010 MRFC Dr. Munson found Gray had several "marked" restrictions in concentration and memory, noting the significant decline in Gray's condition, including a total decline in all social interaction abilities. (R. 727-729). The change in Dr. Munson's MRFC assessments can easily be explained by the worsening of Gray's condition.

The ALJ also found statements from Dr. Munson to not support the "marked" limitations she gave Gray in the June 2011 Medical Source Statement. (R. 26). The ALJ's reliance on Dr. Munson's statement from January 2010, that Gray is capable of low level work, is misplaced. First, it disregards the corresponding narrative that requires occupational support for the low level work. (R. 697). Second, it disregards the possibility that Gray's condition may have worsened since January 2010. As to the worsening of Gray's condition the ALJ writes only this single sentence:

> "While it is entirely possible that the claimant's functioning changed over time, there is no corresponding documentation of a "worsening" of the claimant's conditions in Dr. Munson's treatment notes, at least to the extent suggested by Dr. Munson's 2011 [M]edical [S]ource [S]tatement." (R. 26)

What is puzzling to this Court is why the ALJ did not cite to treatment notes of Dr. Munson, which showed Gray was struggling with family, increased irritability, getting into arguments, continued to dress inappropriately, required monitoring to complete chores,

12

forgetfulness, poor frustration tolerance, failing school, mood chronically mildly low but discouraged, and passive suicidal ideation. (R. 699-702, 705, 710). Additionally, there is other substantive evidence in the record to suggest a decline in Gray's condition. Notably, the decreased Full Scale IQ scores from 91, while Gray was in school, (R. 590), to 84 in April 2011, (R. 757), and 79 in March 2013, (R. 1115). Additionally, Gray's GAF scores show a decline from 62 in December 2008, (R. 653), to 57 in April 2011, (R. 759). While this evidence may not have persuaded the ALJ that Dr. Munson's "marked" limitations were sufficiently supported, the ALJ erred in summarily dismissing them without any discussion when they show a worsening of Gray's condition.

2. *Dr. Kim's Opinion*

The ALJ also discredits the opinion of Dr. Kim, Gray's treating physician, "for the same reasons" the ALJ discredited Dr. Munson's opinion. (R. 26). The ALJ summarily states:

> "[T]he undersigned gave little weight to the opinion of Daniel Kim, M.D., the claimant's most recent psychiatrist, who also suggested that the claimant was markedly to extremely limited in a number of ways since "birth," i.e., 1985 (Ex. 64F). First of all, there has been absolutely no evidence in the record to support the contention that the claimant has been disabled since "birth." Secondly, these statements are not consistent with the longitudinal treatment records of the claimant's multiple other health care providers, particularly the records of Dr. Munson. Thirdly, none of these extreme limitations are chronically documented in the treatment notes of Dr. Kim. Finally, such extreme limitations since "birth" are not consistent with the claimant's other accomplishments, both academic and work related." (R. 26)

Again, the ALJ committed reversible error when he gave a treating physician's opinion little weight without any meaningful analysis of Dr. Kim's findings with the substantive evidence in the record. First, as to the ALJ's finding that there was no evidence in the record to indicate Gray was disabled since birth, this Court disagrees, but does recognize the wide range of dates given. Dr. Linda Munson twice gave an alleged onset date of September 2, 1985. (R. 694-696, 727-729). Dr. Kim, in his Medical Source Statement seemed unsure about the onset date as

13

he opined "9/2/85?". (R. 1124). The Medical Source Statement of Dr. McKenna gave an alleged onset date of the limitations to be August 28, 2008. (R. 736). Dr. Jilhewar, in the Medical Source Statement, opined the alleged limitations were first present on October 13, 2007 (R. 1146). On remand a discussion as to the date the evidence supports should be made. But even if this evidence serves to discredit Dr. Kim's opinion regarding the date of onset the ALJ should not avoid a further analysis of the evidence in weighing Dr. Kim's other critical opinions.

The ALJ's opinion is again void of any meaningful analysis of Dr. Kim's findings with the substantive evidence in the record. Simply stating that the treating physician's opinion is "not consistent with the longitudinal treatment records of the claimant's multiple other health care providers, particularly Dr. Munson" is not an analysis, but rather a conclusory opinion without support. This Court is left to guess what treatment records the ALJ is referring to, as well as the ways in which they are inconsistent. Once again the ALJ's opinion fails to provide a "logical bridge" between the evidence and the conclusions, as there is no discussion of any evidence, or even the alleged inconsistencies. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Where an ALJ's decision lacks an adequate discussion of the issues, the decision cannot stand. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). To the extent the Commissioner tried to support the ALJ's opinion with evidence from the record, the argument fails for the same reason it did under Dr. Munson. It is the duty of the ALJ to provide the analysis, and cannot be relegated. Accordingly, on remand the ALJ must discuss, in detail, what if any inconsistencies he finds to support the conclusion that Dr. Kim's opinion is not consistent with the evidence in the record.

The ALJ's reliance on Gray's "other accomplishments, both academic and work related" is overstated and one-sided. While it is true Gray graduated from high school and attended two

years of college, the ALJ fails to mention with what measure of success this was accomplished. Importantly, this one line of evidence is not sufficient support for the ALJ's reasoning, especially, when no other substantive evidence was considered by the ALJ. An ALJ has a duty to consider all relevant medical evidence and cannot "cherry-pick" facts that support a finding of non-disability while ignoring evidence that indicates a disability finding. *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009). Without any discussion of the other evidence in the record, this is what the ALJ did.

This Court would further direct the ALJ to Social Security Ruling 96-2p, admonishing the ALJ that "in some instances, additional development required by a case – for example, to obtain more evidence or to clarify reported clinical signs or laboratory findings – may provide the requisite support for a treating source's medical opinion that at first appeared to be lacking or may reconcile what at first appeared to be an inconsistency between a treating source's medical opinion and the other substantial evidence in the record." This Court submits this is such a case. While the medical records authored by Dr. Kim are not as voluminous as other physicians in the record, the ALJ has an opportunity to develop Dr. Kim's opinion with additional evidence. To the extent any additional evidence corroborates or detracts from Dr. Kim's findings is a matter left to the ALJ on remand.

3. *20 C.F.R. § 404.1527(c)(2)(i)-(ii) and § 404.1527(c)(3)-(6)*

Even if the Court somehow found the ALJ was justified in giving "very little weight" and "little weight" to Dr. Munson and Dr. Kim respectively, the ALJ would still have been required to articulate his reasons for doing so. Once the ALJ articulates reasons for rejecting the treating physician's opinion, the ALJ must still determine what weight the physician's opinion is due under the applicable regulations. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). *See* 20

15

C.F.R. § 404.1527(d)(2). Even if not controlling, "treating source medical opinions are still entitled to deference and must be weighed using all the factors provided in 20 C.F.R. § 404.1527 and § 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." Social Security Ruling 96-2P. There existed ample evidence of the length of the treatment relationship, nature and extent of the treatment relationship, supportability, consistency, and specialization of Dr. Munson and Dr. Kim consistent with 20 C.F.R. § 404.1527(c)(2)(i)-(ii) and § 404.1527(c)(3)-(6). The ALJ has provided no reason to give these doctors' opinions little weight. Therefore remand is absolutely required for the ALJ to consider Dr. Munson and Dr. Kim's opinions anew.

### B. Other Issues to be Considered on Remand

Having concluded that remand is necessary to rectify problems in the ALJ's analysis of the treating physicians' opinions, the Court need not resolve Gray's additional arguments. However, for the sake of completeness, and to help ensure that the Commissioner's decision on remand is free from unnecessary errors, the Court notes that the following issues should also be addressed on remand.

1. *Listings 12.02 and 12.04*

Gray argues the ALJ erred in finding she did not meet the criteria of Listing 12.02 Organic Mental Disorders and/or Listing 12.04 Affective Disorder because the ALJ did not give proper weight to Dr. Kim's opinion. [DE 9 p. 19-21].

The ALJ did not discuss Listing 12.02 in his opinion. The Commissioner argues this error is without impact because the ALJ considered Listing 12.04 in his analysis and found Gray failed under prong B of the Listing 12.04, which is the same as prong B in Listing 12.02. [DE 14

16

p. 14 fn 3]. The Commissioner concludes that because Gray failed under prong B in Listing 12.04, Gray would have failed under the prong B in Listing 12.02. Gray is silent on this issue. This Court agrees with Commissioner, however, on remand the ALJ should correct this error.

This Court cannot reach the merits of Gray's argument as to Dr. Kim's opinion for the reasons set forth above. However, this Court would highlight the special role a treating physician's opinion is afforded in determining whether a claimant meets or medically equals one of the Listings. *See* SSR 96-5p ("To the extent that a treating source is usually the best source of [ ] documentation, the adjudicator looks to the treating source for medical evidence with which he or she can determine whether an individual's impairment meets a listing."). Therefore, it is critical on remand for the ALJ to explain what weight the treating physician is being afforded, why that weight is appropriate, and how that impacts the ALJ's determination of whether Gray meets or medically equals one of the Listings.

2. *Step-five Analysis*

Gray argues the ALJ's step-five analysis failed to include a limitation of a vocational expert or job coach consistent with the testimony of Dr. Munson, Dr. Cools, and Dr. Kravitz. [DE 17 p. 10-12]. The Commissioner argues that while Dr. Kravitz opined the use of job coach could be helpful, Dr. Kravitz did not say it was necessary. [De 14 p. 16-17]. The Commissioner further disagrees with Gray's reading of Dr. Munson's and Dr. Cools testimony as to the need of a vocational expert. [*Id*.]

A step-five determination is impossible due to the ALJ's inadequate analysis of Gray's treating physicians, which may have impacted Gray's RFC. Accordingly, there is not a valid determination in this case of Gray's RFC. Without a proper RFC evaluation, steps four and five cannot be accurately analyzed. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004) (the ALJ

must determine the claimant's RFC before performing steps 4 and 5 because a flawed RFC typically skews questions posed to the VE); 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8p. This Court cannot evaluate whether the ALJ properly performed step-five given the possibly flawed RFC determination. On remand this Court suggests the ALJ seek clarification about whether Gray is required to have a vocational expert and/or a job coach as a limitation. If the ALJ still finds Gray does not need support, the ALJ should make a finding as to why, and include the evidence that supports this determination.

### C. New Evidence

In Gray's reply brief, Gray asked this Court to remand on the basis of new evidence from Dr. Judith DeGrazia Harrington. [DE 17 p. 12-13]. In Dr. DeGrazia Harrington's neuropsychological evaluation dated October 20, 2014, Gray received two additional diagnoses of Bipolar II Disorder and Avoidant Personality Disorder. [DE 17-1]. The Commissioner did not respond to Gray's proffer of new evidence.

A reviewing court may order additional evidence to be taken before the Commissioner on remand. 42 U.S.C. § 405(g). Remand for consideration of new evidence is appropriate where the evidence is (1) new, (2) material, and (3) there exists good cause for not introducing the evidence during the prior administrative proceeding. *Kapusta v. Sullivan*, 900 F.2d 94, 97 (7th Cir. 1989) (citing *Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir. 1989)).

Evidence is "new" if "not in existence or available to the claimant at the time of the administrative proceeding." *Schmidt v. Barnhart,* 395 F.3d 737, 742 (7th Cir. 2005) (citation omitted). New evidence must be neither cumulative nor irrelevant under § 405(g). *Sears v. Bowen*, 840 F.2d 394 (7th Cir. 1988) (citation omitted).

New evidence is "material" if there exists a "reasonable probability" that the ALJ would have reached a different conclusion had the evidence been considered. *Schmidt*, 395 F.3d at 742 (citing *Johnson v. Apfel*, 191 F.3d 770, 776 (7th Cir. 1999)). For new evidence to be material it must "relate[] to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b). New evidence is immaterial where it speaks to a claimant's current or worsening condition after the ALJ's hearing. *See Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008) (declining to consider new evidence of gout treatment where "[the evidence] pertains only to [claimant's] allegedly worsening condition" after the ALJ's decision); *Schmidt*, 395 F.3d at 742 (noting that "evidence is material only to the extent that it could have affected the outcome of the ALJ's decision," and declining to consider medical records documenting the claimant's medical condition as it existed after the ALJ's decision). Accordingly, medical records that postdate an ALJ's hearing that "speak only to [the claimant's] current condition, not to [claimant's] condition at the time [claimant's] application was under consideration by the Social security Administration," do not meet the standard for new and material evidence. *Kapusta*, 900 F.2d at 97.

Good cause for not introducing evidence exists where the new evidence was not in existence at the time of the ALJ's or Appeals Council's decision. *See Sears*, 840 F.2d at 399 (finding new evidence of a report that "did not exist until after the Appeals Council had denied [claimant's] claim" to be good cause).

Gray argues the additional diagnoses of Bipolar II Disorder and Avoidant Personality Disorder by Dr. DeGrazia Harrington constitute new evidence that must be considered. [DE 17 p. 12-3]. Dr. DeGrazia Harrington's examination and subsequent diagnoses took place on October 20, 2014, which is well after the ALJ's hearing on April 15, 2013, and the ALJ's

19

subsequent decision on July 18, 2013. While this evidence may be considered "new," and there may be "good cause" for not introducing it, it is unclear from Dr. DeGrazia Harrington's report the onset date of these new diagnoses. If Dr. DeGrazia Harrington's diagnoses are the consequence of Gray's condition worsening after the ALJ's hearing, the ALJ need not consider the additional evidence. If the additional diagnoses, however, have an onset date prior to April 15, 2013, the ALJ needs to consider this new evidence. On remand the ALJ should determine the admissibility of such opinions.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Gray's request to remand the ALJ's decision. [DE 9]. This case is **REMANDED** for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED: January 13, 2016

      /s/ JON E. DEGUILIO
Judge
United States District Court